UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACKMOSS INVESTMENTS INC., Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>ACA CAPITAL HOLDINGS, INC. and ALAN S. ROSEMAN,<br><br>    Defendants. | No. 1:07-cv-10528 (RWS) |
| ANDREW F. ROSE, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>ACA CAPITAL HOLDINGS, INC. and ALAN S. ROSEMAN,<br><br>    Defendants. | No. 1:08-cv-00253 (UA) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE INDIVIDUAL INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF, APPOINTMENT OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

### I. INTRODUCTION

Pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act") and Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-4(a)(3)(B), and for the reasons set forth below, Ramesh Gandi and Hyman Silverglad (collectively, the "Individual Investor Group" or "Movant") respectfully move this Court for an Order appointing Movant as Lead Plaintiff on behalf of itself and all others similarly situated who purchased or otherwise acquired the common stock of ACA Capital Holdings, Inc. ("ACA Capital") from November 2, 2006 through November 20, 2007, inclusive (the "Class Period"), including purchasers who purchased shares pursuant and/or traceable to the Company's

initial public offering on or about November 10, 2006, and incurred damages as a result of the Defendants' violations of the federal securities laws. Movant also seeks appointment of the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") as Lead Counsel and the consolidation of all related actions.

Two complaints have been filed in this Court against ACA Capital for violations of the federal securities laws. These complaints (the "Related Actions") are predicated on ACA Capital's failure to disclose, at the time of its IPO, that its collateralized debt obligation ("CDO") assets were materially impaired.

Movant suffered losses[1] of approximately $30,487.91 during the Class Period as a result of Defendants' misleading conduct. Movant is unaware at this time of any other movant with a greater loss. Thus, under Section 27 of the Securities Act and Section 21D of the Exchange Act, Movant is presumptively the "most adequate plaintiff" and should be appointed as lead plaintiff because it has "the largest financial interest in the relief sought by [the] class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb) and 78u-4(a)(3)(B)(iii)(I)(bb). Movant is represented in this action by Cohen Milstein, which is seeking appointment as lead counsel and is eminently qualified to prosecute securities class action claims such as this one.

## II. BACKGROUND

The Related Actions charge ACA Capital and Alan S. Roseman, its President and CEO, with violations of Sections 11, 12(a)(2), and 15 of the Securities Act, Sections 10(b) and 20(a) of

---

[1] The losses suffered by Movant, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question that generally cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the executed certifications required under Section 27 of the Securities Act and Section 21D of the Exchange Act, and based upon reference to information concerning the market for ACA Capital securities. *See* Declaration of Catherine A. Torell in Support of Motion of the Individual Investor Group ("Torell Decl."), at Ex. B.

the Exchange Act, and Rule 10b-5.[2] ACA Capital is a holding company that provides financial guaranty insurance products to participants in the global credit derivative, structured finance capital, and municipal finance capital markets.

On or about November 9, 2006, ACA Capital priced its IPO of 6,875,000 shares of newly issued common stock and 23,541 shares of existing common stock at $13 per share, generating gross proceeds of $89.4 million. The Registration Statement for the IPO described positively ACA Capital's business and the Company's collateralized debt obligation ("CDO") asset management business. The complaint alleges that the Registration Statement for the IPO contained inaccurate statements of material fact because it failed to disclose that the Company's CDO assets were materially impaired and overvalued. On November 19, 2007, after the market closed, the Company belatedly disclosed the full extent of its collateralized debt impairment, the high likelihood that its credit rating would be cut, and the high likelihood that it would be unable to post collateral on various debt obligations. On November 20, 2007, as a result of this news, the price of the Company's stock fell to $1.10 per share.

### III. ARGUMENT

As discussed below, Movant satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as Lead Plaintiff. Additionally, Movant seeks appointment of Cohen Milstein as Lead Counsel for the Class.

#### A. Movant Satisfies the Procedural Requirements For Appointment as Lead Plaintiff

Section 27 of the Securities Act and Section 21D of the Exchange Act, 15 U.S.C. §§ 77z-1 and 78u-4, establish a procedure for the appointment of a lead plaintiff in "each private action arising under the [Securities Act or Exchange Act] that is brought as a plaintiff class action

---

[2] The first of the two above-captioned actions, *Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, No. 1:07-cv-10528 (RWS) (S.D.N.Y. filed Nov. 21, 2007), alleges only violations of the 1933 Act. The second of the two actions, *Rose v. ACA Capital Holdings, Inc.*, No. 1:08-cv-00253 (UA) (S.D.N.Y. filed Jan. 11, 2008), alleges violations of both the 1933 Act and the 1934 Act.

3

pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 77z-1(a)(1) and 78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(A)(i) and 78u-4(a)(3)(A)(i). The first such notice here was published on November 26, 2007 (*see* Torell Decl., Ex. A).

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §§ 77z-1(a)(3)(B)(i) and 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on January 22, 2008. Movant has moved within the statutory 60-day time period. The motion contains the required certifications setting forth, *inter alia*, Movant's transactions in ACA Capital securities during the Class Period, and indicates that Movant has reviewed a complaint filed in the Action and is willing to serve as a representative party on behalf of the Class. *See* Torell Decl., Ex. B. In addition, Movant has selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Cohen Milstein resume at Torell Decl., Ex. C. As noted in the resume, the firm has developed an excellent reputation for successfully prosecuting federal securities law claims.

**B.    Movant Satisfies the Legal Prerequisites For Appointment as Lead Plaintiff**

    **1.    Movant is Presumptively the Most Adequate Plaintiff**

The PSLRA sets forth procedures for the appointment of a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. §§ 77z-1(a)(1) and 78u-4(a)(1). The PSLRA

4

provides that this Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. §§ 77z-1(a)(3)(B)(i) and 78u-4(a)(3)(B)(i). In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the Complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23 and 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I) and 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II) and 78u-4(a)(3)(B)(iii)(II).

Movant satisfies each of these requirements. During the Class Period, Movant suffered losses of approximately $30,487.91 from its purchase of ACA Capital securities.[3] Movant believes it has the largest financial interest in the relief sought by the Class. Further, Movant is willing to actively participate in the leadership of this litigation through both personal involvement and consultation with its chosen counsel.

Moreover, because Movant possesses a significant interest in the outcome of this litigation, it is presumed to be the "most adequate" plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb) and 78u-4(a)(3)(B)(iii)(I)(bb). Movant is both qualified to represent the class and willing to serve as a representative party. In addition, Movant has selected counsel that is highly experienced in prosecuting securities class actions such as this one. Accordingly, Movant satisfies the requirements for appointment as Lead Plaintiff under the PSLRA and the

---

[3] Copies of Movant's certifications are attached to the Torell Decl. as Exhibit B.

instant motion should be granted.

### 2. Movant Satisfies The Requirements of Rule 23

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc) and 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.*, 2002 WL 31720410, at *3 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) and *Weltz v. Lee*, 199 F.R.D 129, 133 (S.D.N.Y. 2001)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to prove the defendants' liability.'" *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification

between the claims constituting each individual action is not required." *Chisholm v. Transouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999). The typicality requirement is plainly satisfied in the instant case, where Movant seeks the same relief and advances the same legal theories as other class members.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members do not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Movant is an adequate representative for the class. Movant purchased ACA Capital securities during the Class Period and, like other putative class members, suffered a loss in the form of the diminution of value in the price of its ACA Capital shares. Moreover, Movant has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v).

### C. The Court Should Appoint Cohen Milstein as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v). Thus, a court should not disturb the lead plaintiff's selection of counsel unless such interference is necessary "to protect the interests of the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa) and 78u-4(a)(3)(B)(iii)(II)(aa). Movant has selected Cohen Milstein to serve as Lead Counsel, and appointing Cohen Milstein as Lead Counsel would be prudent to protect the interests of the class.

As detailed in its firm resume,[4] Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Thus, the Court may be confident that the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v); *Albert Fadem Trust*, 239 F. Supp. 2d at 348 (approving as lead counsel law firm with "substantial experience and success in prosecuting securities fraud actions").

D.  **The Related Actions Should Be Consolidated Pursuant to Rule 42(a)**

Class action shareholder suits are ideally suited for consolidation pursuant to Rule 42(a). *See Weltz*, 199 F. R.D. at 131. Indeed, "in securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced." *Weltz*, 199 F.R.D. at 131.

The Related Actions present virtually identical factual and legal issues and allege similar violations of the federal securities laws. They involve identical parties and arise from the same underlying facts and circumstances. "The proper solution to problems caused by the existence of two or more cases involving the same parties and issues simultaneously pending in the same court would be to consolidate them under Rule 42(a)." *Hargett v. Alley Fed. Sav. Bank*, 60 F.3d 754, 765 (11th Cir. 1995) (quoting *Miller v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1995)); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002); *Primavera Familienstiftgung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Because these actions are based on the same facts and involve the same subject matter, discovery obtained in one lawsuit will undoubtedly be relevant to all others. Consolidation of the related actions is thus appropriate as common questions of law and fact predominate in these

---

[4] A copy of Cohen Milstein's firm resume is attached to the Torell Decl. as Exhibit C.

actions. Fed. R. Civ. P. 42(a). Thus, consolidation is appropriate here. Accordingly, the motion to consolidate the Related Actions should be granted.

## IV.   CONCLUSION

Based on the foregoing, Movant respectfully requests that the Court: (i) appoint it as Lead Plaintiff; (ii) appoint Cohen Milstein as Lead Counsel; (iii) consolidate the Related Actions; and (iv) grant such other relief as the Court may deem to be just and proper.

Dated: January 22, 2008

Respectfully submitted,

COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.

  /s/   Catherine A. Torell
Catherine A. Torell (CT-0905)
150 East 52nd Street, Thirtieth Floor
New York, New York 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

- and -

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Attorneys for the Individual Investor Group and Proposed Lead Counsel for the Class*